**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SUSAN GORDON,

                             Plaintiff,

                    - against -

TARGET CORPORATION,

                            Defendant.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**

CV 14-2599 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff Susan Gordon ("Plaintiff" or "Gordon") brings the instant action against Defendant Target Corporation ("Defendant" or "Target") seeking damages for personal injuries she sustained while shopping at Defendant's store located in Hicksville, New York. *See generally* Complaint [DE 1].[1] Pending before the Court is Defendant's letter motion [DE 42] seeking reconsideration of this Court's December 5, 2016 Memorandum and Order [DE 38] requiring that Defendant disclose the surveillance footage, capturing the incident which allegedly resulted in Plaintiff's injuries, prior to the continuation of Plaintiff's deposition. Plaintiff has filed a response opposing Defendant's motion. For the reasons set forth below, Defendant's motion is DENIED.

**II.    RELEVANT BACKGROUND**

On December 5, 2016, this Court issued a Memorandum and Order resolving Defendant's previously filed letter motion [DE 30] which sought a protective order staying the disclosure of the video surveillance footage of the incident until after Plaintiff's deposition had concluded. *See generally* DE 30. Specifically, Defendant sought to withhold the video footage due to its

---

[1] This action was initially filed in the Supreme Court of the State of New York on March 11, 2014. *See* DE 1. On April 24, 2016, Defendant removed the state court action to this Court based upon diversity grounds. *Id.*

concern that "plaintiff may tailor her testimony based on what it will reveal." *Id*. at 1. Plaintiff opposed the motion primarily on the grounds that Defendant relied on case law which neglected to discuss or analyze the "good cause" requirement and based upon the fact that Defendant's "contentions are merely conclusory allegations, unsupported by any particular and specific demonstration of fact." DE 31 at 1.

In denying the motion, the Court considered the case law identified by each party, and, in conjunction with its own independent research, found the reasoning underlying the decisions cited by Defendant to be "unpersuasive" since none of the cited cases addressed the "good cause" standard, which this Court found to be a necessary condition to determining whether a protective order is appropriate. DE 38 at 7. Specifically, the Court stated that "the touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause" and concluded that this "essential condition precedent is lacking here." *Id*. As such, the Court denied the motion and directed Defendant to turn over the surveillance footage by the date required. *Id*. at 8.

### III. DISCUSSION

**A. Defendant's Motion for Reconsideration**

In its motion, Defendant urges the Court to reconsider its earlier ruling based upon Defendant's position that: (1) "the Court overlooked the weight of authority and District Judge Bianco's express rejection of the *Rofail* approach;" and (2) that Plaintiff's previous written disclosures and partial deposition testimony is at odds with the footage of her accident as captured in the surveillance video. *Id*. at 2-3.

In opposition, Plaintiff distinguishes the cases relied upon by Defendant and ultimately maintains that this line of cases, which permit "stays of production of party statements until after [a] deposition [has concluded] are ignoring both the Rule 26(c) requirement that a litigant demonstrate good cause for the stay and the general rule that discovery by one party does not interrupt discovery of the other." DE 44 at 1-2. In addition, Plaintiff assails Defendant's factual premise for reconsideration, stating that "Defendant's statement that the plaintiff testified 'inconsistently' is merely a conclusory allegation, unsupported by any particular and specific demonstration of fact." *Id*. at 3.

### 1. **Applicable Law**

"A motion for reconsideration in the Eastern District of New York is governed by Local Rule 6.3." *Butto v. Collecto Inc.*, 845 F. Supp. 2d 491, 494 (E.D.N.Y. 2012); *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012); *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 287 (E.D.N.Y. 2013). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995); *Liberty Media Corp.*, 861 F. Supp. 2d at 265; *Hewett v. Triple Point Tech., Inc.*, No. 3:13-CV-1382, 2016 WL 3101998, at *1 (D. Conn. June 2, 2016). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotations omitted); *Hewett*, 2016 WL 3101998, at *1.

Importantly, a motion for reconsideration is not a vehicle for litigants to obtain a proverbial second bite at the apple. *See Trans–Pro Logistic Inc. v. Coby Elecs. Corp.*, No. 05 Civ. 1759, 2010 WL 4065603, at *1 (E.D.N.Y. Oct. 15, 2010) (citing *Ferrand v. Credit Lyonnais*, 292 F. Supp. 2d 518, 520 (S.D.N.Y. 2003)); *Butto*, 845 F. Supp. 2d at 494 (recognizing that "a motion for reconsideration is not an opportunity for litigants to reargue their previous positions or present new or alternative theories that they failed to set forth in connection with the underlying motion."); *Callari*, 988 F. Supp. 2d at 287; *see also Liberty Media Corp.*, 861 F. Supp. 2d at 265 ("The purpose of Local Rule 6.3 is to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'") (quoting *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008)). It follows that Rule 6.3 should be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have already been considered fully by the court" and in keeping with the view that reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Trans–Pro Logistic Inc.,* 2010 WL 4065603 at *1 (internal quotations omitted); *United States v. Treacy,* No. 08 Cr. 0366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation omitted); *Liberty Media Corp.*, 861 F. Supp. 2d at 265. Whether a motion for reconsideration should be granted is a decision that "rests within the sound discretion of the district court." *Kapsis v. Bloom,* No. 08 Civ. 3092, 2009 WL 414001, at *1 (E.D.N.Y. Feb. 17, 2009); *Butto*, 845 F. Supp. 2d at 494; *Liberty Media Corp.*, 861 F. Supp. 2d at 265; *Patterson v. United States*, No. 04 Civ. 3170, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006).

## 2. *Application to the Facts*

The Court first addresses Defendant's argument that the Court has "overlooked the weight of authority and District Judge Bianco's express rejection of the *Rofail* approach" in its previous decision. DE 42 at 2. Initially, the Court reaffirms the proposition that "[a] trial court enjoys wide discretion in its handling of pre-trial discovery. *Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992); *see Baker v. Orleans County*, 96-CV-0503, 1997 WL 436703, at *1, (W.D.N.Y. July 21, 1997) ("District courts are given reasonable latitude and discretion to establish a priority or to fashion an appropriate sequence of the discovery to be performed in each case."); *Rofail v. United States*, 227 F.R.D. 53, 54 (E.D.N.Y. 2005) ("It is within [the judge's] discretion to time document production."); *Lang v. Wal-Mart Stores, Inc.*, No. CV 15-2528 (E.D.N.Y. July 17, 2015) (Slip Op.) at 2 (recognizing that "it is well within a magistrate judge's broad discretion to time document production."); *see also* Fed. R. Civ. P. 26(d) ("Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice . . . methods of discovery may be used in any sequence[.]"). As such, "whether or not disclosure should be delayed is a matter of the court's discretion." *Costa v. AFGO Mech. Servs., Inc.*, 237 F.R.D. 21, 23 (E.D.N.Y. 2006). Similarly, where a party seeks a protective order pursuant to Rule 26(c), "[t]he grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion. . . ." *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992); *see Rofail*, 227 F.R.D. at 55.

Although Defendant has cited a number of decisions that do not comport with the reasoning set forth in *Rofail*, the Court previously distinguished the majority of these opinions in its prior Order on the grounds that such cases "adopted, without discussion of the 'good cause'

standard set forth in Rule 26, the common practice . . . for courts to grant stays of production of the statements of parties (and other investigative materials) until after the party has been deposed." DE 38 at 5-6. Indeed, similar to its original motion, Defendant again primarily relies upon *Poppo v. AON Risk Servs, Inc.*, No. 00 Civ. 4165, 2000 WL, 1800746, at *1 (S.D.N.Y. Dec. 6, 2000) (noting only that courts within the Second Circuit have "delayed production of audio or video tapes prior to one or more depositions" and "declining to deviate from these precedents."); *Brannan v. Great Lakes Dredge & Dock Co.*, No. 96 CIV. 4142, 1998 WL 229521, at *2 (S.D.N.Y. May 7, 1998) (recognizing that "defendant is entitled to lock in plaintiff's position on his condition as of the time of the videotapes prior to giving plaintiff access," but providing no discussion as to whether the defendant established good cause for such a delay in production); *Daniels v. Nat'l R.R. Passenger Corp.*, 110 F.R.D. 160, 161 (S.D.N.Y. 1986) (recognizing that "it may be appropriate to require disclosure of such impeachment materials only after the depositions of the plaintiff or other witnesses to be impeached, so that their testimony may be frozen" and finding, without discussing good cause, that such a "procedure is appropriate here"); *Caruso v. Target Corporation*, No. 12-2341 (E.D.N.Y. May 22, 2013) (Slip Op.) at 1 (declining to address the good cause standard and instead noting that "[t]his court agrees with the widely held view that . . . it is appropriate to delay discovery until after the plaintiff testifies at a deposition"). The Court has already set forth its reasoning which disagreed with the rationale and ultimate conclusion reached in each of these decisions and will not do so again here. *See Trans–Pro Logistic Inc.*, 2010 WL 4065603 at *1 (internal quotations omitted); *Treacy*, 2009 WL 47496, at *1; *Liberty Media Corp.*, 861 F. Supp. 2d at 265.

With respect to Defendant's assertion that Judge Bianco "expressly rejected the *Rofail* approach in *Lang* [*v. Wal-Mart Stores, Inc.*, No. CV 15-2528 (E.D.N.Y., Jul. 16, 2015) (Slip Op.)]," the Court respectfully disagrees with such a blanket characterization. While it is true that Judge Bianco stated that the approach taken in *Rofail* "was at odds with the common practice in this district (and others) to allow the delayed production of impeachment evidence," *Lang*, No. CV 15-2528, Slip Op. at 3, this passage is merely *dictum* providing support to Judge Bianco's ultimate finding that Magistrate Judge Shield's initial decision granting a stay of video surveillance footage was not clearly erroneous or contrary to law. *See id*. at 3 (recognizing that the "issue before the Court is whether Magistrate Judge Shields' decision was clearly erroneous or contrary to law."); 5 (concluding that Magistrate Judge Shields' June 5, 2015 Order "was not clearly erroneous or contrary to law" and affirming the same). In addition, as the Court pointed out in its initial decision, the facts underlying Magistrate Judge Shields' initial holding in *Lang* and Judge Bianco's ultimate affirmance of the same are distinguishable from those in the instant case. Specifically, in *Lang*, Judge Bianco noted "[t]he defendant asserts that the account of events in plaintiff's complaint is already at odds with the video footage of the incident . . . Accordingly the Court is mindful of the defendant's very real concern that plaintiff's testimony may be affected if she views the footage before her testimony. Thus the defendant has shown good cause for sequencing discovery." *Lang*, No. CV 15-2528, Slip Op. at 5. Such facts are not present in the instant case thus further attenuating the applicability of *Lang* to the case at bar. Further, to the extent that this Court declines to adhere to a "common practice" that may exist within this district, such a decision is within this Court's ultimate discretion in managing the discovery process and does not establish that it has ignored or overlooked prevailing precedent. Indeed, in *Lang*, Judge Bianco expressly

7

noted that other judges adjudicating a similar discovery issue may well have reached a different conclusion and stated only that "it is insufficient, upon appeal of a magistrate judge's ruling, to argue that other judges might have ruled in plaintiff's favor." *Id*. at 3.

The Court also rejects Defendant's argument that "[i]ntervening case law has again affirmed that the heightened *Rofail* standard is not the law in this jurisdiction." DE 42 at 2 (citing *Fallica-Risteff v. Target*, CV 16-4195 (E.D.N.Y. Oct. 14, 2016) (Slip Op.)). In support of this argument, Defendant cites two cases decided by Magistrate Judge Lindsay which Defendant purportedly asserts stands for the proposition that *Rofail* is not good law. However, Defendant misinterprets the thrust of both of Judge Lindsay's decisions. In *Caruso v. Target Corporation*, No. CV 12-2341 (E.D.N.Y. May 22, 2013) (Slip Op.) and *Fallica-Risteff v. Target*, CV 16-4195 (E.D.N.Y. Oct. 14, 2016) (Slip Op.), upon which Defendant relies, Judge Lindsay did not discuss or explicitly disagree with the reasoning as set forth in *Rofail*. Rather, both *Caruso* and *Fallica-Risteff* were decided based only upon the "widely held view that in balancing the competing interests of the parties with respect to disclosure of surveillance films, it is appropriate to delay discovery until after Ms. Fallica-Ristef testifies at a deposition." *Fallica-Risteff*, No. CV 16-4195, Slip Op. at 1; *see Caruso*, No. CV 12-2341, Slip Op. at 1. The Court, in its initial Order, disagreed with this approach since both of these cases neglected to address how Defendant met the "good cause" standard required under Rule 26.

In light of the broad authority held by this Court in deciding discovery issues before it, *see Cruden*, 957 F.2d at 972; *Baker*, 1997 WL 436703, at *1, its rejection of the reasoning in *Fallica-Risteff* and *Caruso* and adoption of the approach taken in *Rofail* is not contrary to nor does it overlook controlling authority. Rather, the Court's reasoning and ultimate decision are an exercise

of its inherent discretion in managing the discovery process and, as such, the Court declines to reverse its original ruling on that basis. Further, other courts outside of this district have found that surveillance footage should be turned over prior to the plaintiff's deposition. *See, e.g.*, *Inferrera v. Wal-Mart Stores, Inc.*, No. CIV. 11-5675, 2011 WL 6372340, at *2 (D.N.J. Dec. 20, 2011) ("The Court will not authorize 'gotcha games.' Defendant's tape will be produced and then plaintiff will be deposed. This is how the orderly progression of civil cases has and will proceed."); *Holburn v. NCL (Bahamas) Ltd.*, No. 14–21887–CIV, 2014 WL 8630709 (S.D. Fla. Sept. 26, 2014), (finding that the defendant's claim of prejudice based on the possibility that the plaintiff could tailor her testimony was merely speculative, and that the defendant did not carry the burden to justify delay in production); *Terman v. NCL (Bahamas), Ltd.*, No. 14-24727-CV, 2015 WL 3892508, at *1 (S.D. Fla. June 16, 2015) (declining to stay production of video surveillance footage where "Defendant has not demonstrated to the Court that Plaintiff would tailor his testimony after viewing the surveillance video"); *Dehart v. Wal-Mart Stores, E., L.P.*, No. 4:05CV00061, 2006 WL 83405, at *2 (W.D. Va. Jan. 6, 2006) (directing disclosure of surveillance footage prior to deposition where the footage was "likely to provide both substantive as well as impeachment evidence"); *Gutshall v. New Prime, Inc.*, 196 F.R.D. 43, 46 (W.D. Va. 2000) (granting plaintiff's motion to compel production of surveillance evidence intended solely for impeachment purposes); *Gardner v. Norfolk S. Corp.*, 299 F.R.D. 434, 438 (D.N.J. 2014) (directing disclosure of surveillance footage prior to plaintiff's deposition and recognizing that "permitting parties to delay production of this relevant evidence requested in the context of the parties' discovery requests would nullify the discovery process. [F]airness concerns weigh against the kind of sandbagging involved when the moving party sets up grounds for impeachment by using undisclosed materials

in an attempt to manufacture inconsistencies.") (alteration in original); *Huffman v. K.C. Transp., LLC*, No. 3:13-CV-301, 2014 WL 4851877, at *2 (S.D. Miss. Sept. 29, 2014) (quashing deposition subpoenas and ordering Defendant to produce all video surveillance footage prior to depositions taking place)

Turning to Defendant's assertion that new evidence compels a different result, the Court finds this argument to be without merit. Although Defendant states that Plaintiff's written disclosures were "already at odds with the video footage of the incident" and that her deposition testimony was inconsistent with the video, such statements, without more, are mere conclusions and are insufficient to support Defendant's motion. Indeed, Defendant had every opportunity but never provided the Court with Plaintiff's written disclosures nor with a transcript of the Plaintiff's deposition. Arguing from the standpoint of nothing other than bare assertions, the Defendant's position remains speculative at best. The reality here is that the Defendant has not demonstrated to the Court that Plaintiff would tailor her testimony after viewing the surveillance video. Without any such evidence, Defendant's statements remain mere conclusions -- which are a far cry from meeting the "good cause" standard. Consequently, those conclusory assertions cannot serve as the factual predicate for the protective order sought in this case. *See Costa*, 237 F.R.D. at 24 ("Where a specific showing of good cause has been made, Rule 26(c) authorizes the court to issue a protective order.")

Having considered the arguments on both sides, the Court DENIES the motion for reconsideration and adheres to its original ruling.

**IV.	CONCLUSION**

Based upon the foregoing analysis, Defendant's motion for reconsideration is DENIED. Defendant is directed to provide Plaintiff's counsel with a copy of the surveillance video within five (5) days of the date of this Order.

**SO ORDERED.**

Dated:	Central Islip, New York
	December 15, 2016

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge